**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------

PRIMITIVO ROBLES, on behalf of himself and          Case No. 1:24-cv-07658-MKV
all others similarly situated,

                     Plaintiff,

        v.

CAPRI HOLDINGS 2 LLC *d/b/a* BUDR
CANNABIS,                                            March 5, 2025
        Defendant.

-----------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST**
**AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

## TABLE OF CONTENTS

**PAGE**

Table of Authorities ……………………………………………………………… ii

I.    Introduction ……………………………………………………………….. 1

II.   Factual Background …………………………………………………………… .2

III.  Argument ………………………………………………………………….. 5

    A.    Legal Standard ………………………………………………………….. 5

        1.    Plaintiffs Must Establish Standing to Invoke a Court's Subject Matter Jurisdiction ………………………………………………… 5

        2.    The Second Circuit Requires Plaintiffs to Plead Three Specific Elements to Establish Injury-in-Fact Under Title III of the ADA …………………………………………………………… 6

        3.    Serial ADA Plaintiffs Must Plead Injury in Greater Detail …………… 7

    B.    The Court Lacks Subject-Matter Jurisdiction Over Plaintiff's ADA Claim …... 8

        1.    The Plaintiff Lacks Standing Because He Failed to Satisfy Prong Three of the Title III Injury Analysis ………………………………….. 8

        2.    The Court Lacks Subject-Matter Jurisdiction Because Plaintiff's Claims Are Moot …………………………………………….……… 13

    C.    This Court Lacks Subject Matter Jurisdiction over Plaintiff's State and Local Law Claims, Which are Also Insufficiently Pleaded ……………..………15

    D.    Plaintiff's Declaratory Relief Claim Should be Dismissed as it is Duplicative of His ADA Claim …………………………………………………………17

IV.   Conclusion ……………………………………………………………… 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Batista v. PhotonLight.com, Inc.*,
  84 Misc. 3d 1210(A), 219 N.Y.S.3d 869 (N.Y. Sup. Ct. 2024).................................................16

*Broidy Cap. Mgmt. LLC v. Benomar*,
  944 F.3d 436 (2d Cir. 2019)........................................................................................................6

*Calcano v. Swarovski N. Am. Ltd.*,
  36 F.4th 68 (2d Cir. 2022) ......................................................................................................7, 8

*Carter v. HealthPort Techs., LLC*,
  822 F.3d 47 (2d Cir. 2016).........................................................................................................5

*Chalas v. Pork King Good*,
  673 F. Supp. 3d 339 (S.D.N.Y. 2023)......................................................................................17

*Cohen v. Postal Holdings, LLC*,
  873 F.3d 394 (2d Cir. 2017).....................................................................................................15

*Diaz v. Kroger Co.*,
  No. 18 CIV. 7953 (KPF), 2019 WL 2357531 (S.D.N.Y. June 4, 2019)..................................13

*Dominguez v. Banana Republic*,
  LLC, 613 F. Supp. 3d 759 (S.D.N.Y. 2020), *aff'd sub nom. Calcano v.*
  *Swarovski N. Am. Ltd.*, 36 F.4th 68 (2d Cir. 2022)...................................................................8

*et seq. Dominguez v. New York Equestrian Ctr., Ltd.*,
  No. 18-CV-9799 (AJN), 2020 WL 5796275 (S.D.N.Y. Sept. 28, 2020) ................................16

*Fontanez v. Valley Lahvosh Baing Co., Inc.*,
  No. 1:22-CV-5537 (MKV), 2023 WL 5390212 (S.D.N.Y. Aug. 22, 2023)........................7, 12

*Goldberg v. Stein Saks, PLLC*,
  No. 1:23-CV-3089 (MKV), 2024 WL 816518 (S.D.N.Y. Feb. 26, 2024),
  *appeal dismissed*, No. 24-515, 2024 WL 4194016 (2d Cir. Aug. 7, 2024) ..............................9

*Guerrero v. Ellusionist.com, Inc.*,
  No. 22-CV-2465 (ER), 2023 WL 3847402 (S.D.N.Y. June 6, 2023)......................................17

*Guglielmo v. Nebraska Furniture Mart, Inc.*,
  No. 19 CIV. 11197 (KPF), 2020 WL 7480619 (S.D.N.Y. Dec. 18, 2020).............................13

*Guzman v. Barr*,
  No. 1:19-CV-07163-MKV, 2021 WL 135909 (S.D.N.Y. Jan. 14, 2021).................................6

ii

*Harty v. W. Point Realty, Inc.*,
　28 F.4th 435 (2d Cir. 2022) .............................................................................7, 9

*Hennessy by & through Hennessy v. Poetica Coffee Inc.*,
　No. 21CV5063KAMRML, 2022 WL 4095557 (E.D.N.Y. Sept. 7, 2022) ...............................7

*Kramer v. Time Warner Inc.*,
　937 F.2d 767 (2d Cir. 1991)...........................................................................4

*Lacewell v. Off. of Comptroller of Currency*,
　999 F.3d 130 (2d Cir. 2021)...........................................................................6

*Lugo v. City of Troy, New York*,
　114 F.4th 80 (2d Cir. 2024) ...........................................................................5

*Makarova v. United States*,
　201 F.3d 110 (2d Cir. 2000)...........................................................................5

*Martin v. Second Story Promotions, Inc.*,
　No. 1:22-CV-10438 (MKV), 2024 WL 775140 (S.D.N.Y. Feb. 26, 2024) ...........................7

*Odums v. Greenpoint Mortg. Funding, Inc.*,
　831 F. App'x 32 (2d Cir. 2020).........................................................................4

*Payne v. Cornell Univ.*,
　No. 21-109-CV, 2022 WL 453441 (2d Cir. Feb. 15, 2022) ...................................15

*Sookul v. Fresh Clean Threads, Inc.*,
　No. 1:23-CV-10164-GHW, 2024 WL 4499206 (S.D.N.Y. Oct. 16, 2024)........................7

*Sullivan v. BDG Media, Inc.*,
　71 Misc. 3d 863, 146 N.Y.S.3d 395 (N.Y. Sup. Ct. 2021) ...................................16

*Tavarez v. Extract Labs, Inc.*,
　No. 21-CV-9916 (JPO), 2023 WL 2712537 (S.D.N.Y. Mar. 30, 2023)........................13

*Toro v. Gen. Store*,
　LLC, No. 1:22-CV-6130 (MKV), 2023 WL 4624690 (S.D.N.Y. July 19,
　2023) ...........................................................................12

*Uzuegbunam v. Preczewski*,
　592 U.S. 279 (2021).........................................................................6

*Williams v. Long Beach Mortg. Co.*,
　709 F. App'x 92 (2d Cir. 2018).........................................................................15

*Winegard v. Crain Commc'ns, Inc.*,
　No. 20-CV-01509 (AJN), 2021 WL 1198960 (S.D.N.Y. Mar. 30, 2021) ........................16

*Winegard v. Golftec Intell. Prop. LLC*,
    674 F. Supp. 3d 21 (E.D.N.Y. 2023) ...................................................................8

*Zuchegno v. FQSR, LLC*,
    600 F. Supp. 3d 279 (W.D.N.Y. 2022) ...............................................................15

**Statutes**

42 U.S.C. § 12182 ............................................................................................... *passim*

New York Executive Law §§ 292 *et seq.* ...................................................................16

**Other Authorities**

*Bronx County NY*, ZILLOW, https://www.zillow.com/browse/homes/ny/bronx-
    county/ ....................................................................................................................3

*Bronx County, NY ZIP Codes*, ZIP-CODES.COM, https://www.zip-
    codes.com/county/ny-bronx.asp ..............................................................................3

Federal Rule of Civil Procedure 12(b)(1) ........................................................... *passim*

GOOGLE MAPS, https://www.google.com/maps ....................................................11, 12

*Guidance on Web Accessibility and the ADA*, U.S. DEP'T JUST. CIV. RTS. DIV.,
    https://www.ada.gov/resources/web-guidance/ (published Mar. 18, 2022) .............3

U.S. CONST. art. III ................................................................................................5

## I.    <u>Introduction</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Defendant, Capri Holdings 2 LLC ("Defendant"), hereby moves to dismiss each count of the First Amended Class Action Complaint & Jury Demand ("Amended Complaint") filed by the Plaintiff, Primitivo Robles ("Plaintiff"), Docket Entry No. 11, for lack of subject-matter jurisdiction.

The Plaintiff brings a claim for discrimination under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"), alleging that he was injured because he was unable to fully access the online menu for Defendant's cannabis dispensary.  This prolific ADA plaintiff's copy-and-paste complaint fails to plead critical facts necessary to establish standing under Title III of the ADA.  This Court has already allowed the Plaintiff to amend his complaint once. Dkt. No. 9.  Through such amendment, Plaintiff may have remedied – at least to withstand an initial Motion to Dismiss – one of the issues with his original pleading, which was that he failed to plead injury due to alleged accessibility barriers to an online menu for a store not yet open for business.  However, the Amended Complaint brings to light other deficiencies in his allegations.

The website at issue is of no practical use to a person who has no intention of visiting a Budr Cannabis dispensary to purchase a product or of ordering Budr Cannabis products for delivery.  The Plaintiff does not allege that he has ever visited, or purchased from, Defendant's brick-and-mortar cannabis dispensary.  Nor does the Plaintiff allege where he currently lives.[1]  The absence of these allegations makes it impossible for the Court to perform the necessary analysis of whether the Plaintiff truly intends to visit, and purchase from, the Website in the future.  Moreover, Plaintiff's claims are moot as the website at issue has been remediated.

---

[1] Although the Plaintiff does not provide his current address, it bears noting that in Exhibit 1 to the Amended Complaint a March 2024 medical report links him to 343 West 121st Street, Apt #3, New York, New York, 10027. Am. Compl. Ex. 1.  However, there is no allegation that he currently lives at this address.  *Id.*

Accordingly, the Plaintiff lacks Article III standing to bring this action as (a) he was not injured under the ADA; and (b) his claims are moot as the website at issue has been remediated. Therefore, the Court lacks subject matter jurisdiction over the ADA claim, which is the only federal question, and is consequently precluded from exercising supplemental jurisdiction over the state and local law claims.  The action must be dismissed.

## II.    <u>Factual Background</u>

The Defendant is a New York Limited Liability Company which operates a state licensed cannabis retail store in Yonkers, New York, under the name "Budr Cannabis."  Am. Compl. ¶ 2; Tirella Decl. ¶ 4.  The Yonkers store recently opened on October 15, 2024.  Tirella Decl. ¶ 5. Separate legal entities, who are not named defendants in the instant action, have operated retail cannabis establishments in Connecticut under a *d/b/a* of Budr Cannabis since July 2023 (collectively with Capri Holdings 2 LLC, "Budr Cannabis Entities").  Am. Compl. ¶ 2; Tirella Decl. ¶ 6.  The Defendant entity here has no ownership or membership interest in these separate Connecticut entities.  Tirella Decl. ¶ 6.

The Budr Cannabis stores operate a shared website with the domain name www.budrcannabis.com ("Website").  *Id.* ¶ 7.  The Budr Cannabis Entities hired Rebel Interactive Group, LLC d/b/a Rebellion Group ("Rebellion Group"), a website design company, to build the Website.  *Id.* ¶ 8.  Rebellion Group builds the parts of the Website aside from the Website's online "menu" of cannabis products.  *Id.*  The Website's menu is made accessible through a plug-in from Jane Technologies, Inc. d/b/a I Heart Jane, which embeds the menu into the Website.  *Id.* ¶ 9.  The Website has operated since 2023 in relation to the Connecticut locations.  Tirella Decl. ¶ 7.

From the Website, customers can access the online menu through which they can select cannabis products to be set aside at a Budr Cannabis dispensary which they can subsequently purchase upon the customer's arrival at that location.  *Id.* ¶ 10. When the Yonkers location opened,

the Website also listed a menu for that location.  *Id.* ¶ 11.  Some of the Budr Cannabis locations offer delivery of online orders to a location within a certain radius of that dispensary.  *Id.* ¶ 12.  Budr Cannabis Yonkers delivers to just two (2) of the at least twenty-five (25) ZIP codes that make up Bronx County.  *Id.* ¶ 13; *see*, *e.g.*, *ZIP Codes in Bronx County NY*, ZILLOW, https://www.zillow.com/browse/homes/ny/bronx-county/ (listing twenty-seven (27) ZIP codes in the Bronx); *Bronx County, NY ZIP Codes*, ZIP-CODES.COM, https://www.zip-codes.com/county/ny-bronx.asp (listing twenty-five (25) ZIP codes in the Bronx).  It does not deliver to the vast majority of Bronx County.  *Id.* ¶ 13.  Budr Cannabis Yonkers did not begin its delivery service until November of 2024.  *Id.*

In October 2024, the Budr Cannabis Entities contacted Rebellion Group and instructed it to ensure the Website was in compliance with the Web Content Accessibility Guidelines ("WCAG") published by the World Wide Web Consortium.[2] *Id.* ¶ 16.  Rebellion Group conducted an audit on representative pages of the Website for any WCAG violations.  Tinall Decl. ¶ 6.  "Representative" pages are considered pages that use the same base template and components, and differ only in the specific written and visual content they contain.  *Id.* ¶ 6.  Rebellion Group audited the representative pages with the intent that issues identified on those pages would be subject to remediation on corresponding "sister" pages.  *Id.* ¶ 6.  Based on this audit, Rebellion Group recommended remediation for certain of the Website's pages.  *Id.* ¶ 7.  In November 2024, Rebellion Group began remediating these pages.  *Id.* ¶ 8.  On March 4, 2025, Rebellion Group

---

[2] According to the U.S. Department of Justice Civil Rights Division, the Web Content Accessibility Guidelines ("WCAG") "provide helpful guidance concerning how to ensure accessibility of website features."  *Guidance on Web Accessibility and the ADA*, U.S. DEP'T JUST. CIV. RTS. DIV., https://www.ada.gov/resources/web-guidance/ (published Mar. 18, 2022).  The Plaintiff also refers to the WCAG in his Amended Complaint.  Am. Compl. ¶ 80.  Accordingly, this Memorandum of Law will use the terms "ADA-compliant" and "WCAG-compliant" interchangeably.

confirmed that it completed this remediation to WCAG standards. *Id.* Rebellion Group manually performed quality assurance testing on the remediated pages, in addition to automated testing. *Id.* For the automated testing, Rebellion Group used PowerMapper, the same tool identified in Plaintiff's Amended Complaint, to re-test portions of the Website. *Id.* ¶ 9, Ex. A.

An accessibility audit ran by Carl Tirella Jr., a founder of the Budr Cannabis Entities, confirmed that the page www.budrcannabis.com/shop-yonkers, a page which includes the Website's online menu, is now "accessible" and "compl[ies] with legislation." Tirella Decl. ¶ 19, Ex. A. Tirella does not intend to undo the changes made by Rebellion Group and does not intend to regress the Website into a non-accessible state. Tirella Decl. ¶ 20.

The Plaintiff here is a serial ADA litigant. As of the date of this filing, Plaintiff has filed twenty-four (24) virtually identical ADA cases in this District, including the instant Amended Complaint. Stafstrom Decl. ¶¶ 5-7.[3] The Plaintiff is, according to the Amended Complaint, a visually impaired and legally blind person. Am. Compl. ¶ 1. The Amended Complaint alleges that the Plaintiff visited the Website from Bronx County, New York, on October 5th and 6th, 2024, and on February 15th and 17th, 2025, and encountered "access barriers" that prevented him from utilizing the Website's services. Am. Compl. ¶¶ 12, 31, 32. Specifically, the Plaintiff alleges that he intended to "explore and purchase from" the online menu of cannabis products. Am. Compl. ¶ 36.

---

[3] When considering a motion to dismiss, courts may take judicial notice of public records, such as complaints and other documents filed in federal court. *See*, *e.g.*, *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (courts may, and "routinely" do, take judicial notice of documents filed in courts, not for the truth of the matter asserted in the other litigation, but to establish the fact of the litigation); *Odums v. Greenpoint Mortg. Funding, Inc.*, 831 F. App'x 32, 33 (2d Cir. 2020) (same).

The Amended Complaint does not allege that the Plaintiff ever visited the Yonkers store, purchased from Budr Cannabis, or that he ever attempted to arrange for delivery. The Website is of no practical use unless a customer intends to visit a Budr Cannabis location, or lives within the delivery zone of one. Tirella Decl. ¶ 14. The Plaintiff never requested an accommodation from the Defendant. Tirella Decl. ¶ 15. The Plaintiff seeks injunctive relief, declaratory relief, compensatory damages, and punitive damages. Am. Compl. ¶¶ 51-96.

## III.    <u>Argument</u>

### A.    **Legal Standard**

1.    <u>Plaintiffs Must Establish Standing to Invoke a Court's Subject Matter Jurisdiction.</u>

It is well settled that where a court lacks subject matter jurisdiction to adjudicate an action, the action is properly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). *See e.g.*, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (courts shall dismiss a case when it lacks "statutory or constitutional power to adjudicate it"). Critical to a court's subject matter jurisdiction is whether the plaintiff has standing. *See*, *e.g.*, *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016) (dismissal for lack of standing is one for lack of subject matter jurisdiction).

Article III of the Constitution extends judicial power to federal courts for the resolution of "Cases" and "Controversies," and for a case or controversy, a plaintiff must have a personal interest—standing—to bring the action. U.S. CONST. art. III; *Lugo v. City of Troy, New York*, 114 F.4th 80, 86 (2d Cir. 2024). It is the plaintiff's burden to establish the elements of standing. *Carter*, 822 F.3d at 54. These elements are: (a) the plaintiff has suffered, or will suffer, a concrete, particularized and actual or imminent injury; (b) the injury is fairly traceable to the defendant; (c) and the injury is redressable by a court's ruling. *Lugo*, 114 F.4th at 85. If the case or controversy

has independently resolved such that a court "can no longer provide a plaintiff with any effectual relief," the case is moot, the plaintiff no longer has standing, and the case must be dismissed. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021).

In resolving a motion to dismiss for lack of subject matter jurisdiction, courts may refer to evidence outside the complaint, such as affidavits and declarations. *See*, *e.g.*, *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 441 (2d Cir. 2019) (district courts can consider evidence outside the pleadings when deciding a motion to dismiss under 12(b)(1), including evidence "presented by affidavits or otherwise"); *Guzman v. Barr*, No. 1:19-CV-07163-MKV, 2021 WL 135909, at *2 (S.D.N.Y. Jan. 14, 2021) (when resolving a motion to dismiss for lack of subject matter jurisdiction, district courts may consider "affidavits and other materials beyond the pleadings to resolve the jurisdictional issue").

Where a plaintiff lacks injury from the start, or where the injury becomes moot, a Rule 12(b)(1) motion to dismiss must be granted. *See*, *e.g.*, *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 148 (2d Cir. 2021) (where a plaintiff fails to adequately allege Article III standing, his or her claims "must be dismissed").

2.    The Second Circuit Requires Plaintiffs to Plead Three Specific Elements to Establish Injury-in-Fact Under Title III of the ADA.

Title III of the ADA ("Title III") prohibits places of "Public Accommodation" from discriminating against individuals on the basis of disability. 42 U.S.C. § 12182. The Second Circuit has prescribed three specific requirements that a plaintiff must plead to establish injury-in-fact, and thereby standing, under Title III. *Lugo*, 114 F.4th at 86.

First, a plaintiff must show that he was injured under the ADA in the past. *Id.* Second, the Court must find that it was reasonable to infer that the alleged discriminatory treatment would continue. *Id.* Third, the Court must find that it was reasonable to infer, based on the past frequency

of plaintiff's visits and the proximity of defendant's services to plaintiff's home, that plaintiff intends to return to the Public Accommodation. *Id.* The third prong requires the plaintiff to allege a "real and immediate threat of future injury." *Id.* At all stages of litigation, the burden remains on the party invoking federal jurisdiction to establish the elements of standing. *Id.* at 87.

Courts in the Second Circuit will grant a defendant's motion to dismiss an ADA claim for want of standing where the plaintiff does not establish each of these three elements. *See*, *e.g.*, *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 76 (2d Cir. 2022) (affirming lower courts' dismissal of an ADA cases because the plaintiffs lacked injury in fact); *Fontanez v. Valley Lahvosh Baing Co., Inc.*, No. 1:22-CV-5537 (MKV), 2023 WL 5390212, at *4 (S.D.N.Y. Aug. 22, 2023) (dismissing website-ADA claim for lack of injury in fact). The Second Circuit has specifically affirmed a district court's grant of a motion to dismiss where the plaintiff failed to concretely allege that he intended to patronize one of the brick-and-mortar establishments that owned the subject website. *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444-44 (2d Cir. 2022).

3.    Serial ADA Plaintiffs Must Plead Injury in Greater Detail.

Prolific ADA-website plaintiffs have been required to show "even more detail in complaints" than a typical plaintiff. *See Calcano*, 36 F.4th at 77 (stating that the "backdrop of Plaintiffs' Mad-Libs-style complaints further confirms the implausibility of their claims of injury"); *see also Sookul v. Fresh Clean Threads, Inc.*, No. 1:23-CV-10164-GHW, 2024 WL 4499206, at *4 (S.D.N.Y. Oct. 16, 2024) (some courts in the district require more detailed complaints from prolific ADA-website plaintiffs); *Hennessy by & through Hennessy v. Poetica Coffee Inc.*, No. 21CV5063KAMRML, 2022 WL 4095557, at *4 (E.D.N.Y. Sept. 7, 2022) (same); *Martin v. Second Story Promotions, Inc.*, No. 1:22-CV-10438 (MKV), 2024 WL 775140, at *3 (S.D.N.Y. Feb. 26, 2024) (same). Specifically, the bar for prolific ADA plaintiffs has been raised

"appreciably for adequately pleading standing . . .." *Hennessy by & through Hennessy*, 2022 WL 4095557, at *4.

A prolific ADA plaintiff is described as one who repeatedly takes part in the filing of "serial, formulaic complaints," *Sookul*, 2024 WL 4499206, at *4, which have been "mass produc[ed]." *Calcano*, 36 F.4th at 77. One opinion from the Eastern District of New York described the phenomenon as a "scheme of systematic extortion, designed to harass and intimidate business owners into agreeing to cash settlements," which "saps judicial resources . . . [and] mocks the statute's mission." *Winegard v. Golftec Intell. Prop. LLC*, 674 F. Supp. 3d 21, 27 (E.D.N.Y. 2023) (internal citations omitted). This is precisely the situation here.

**B.    The Court Lacks Subject-Matter Jurisdiction Over Plaintiff's ADA Claim.**

1.    <u>The Plaintiff Lacks Standing Because He Failed to Satisfy Prong Three of the Title III Injury Analysis.</u>

The Plaintiff lacks standing under the ADA because he has failed to establish that it is "reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendant's services to plaintiff's home, that plaintiff intends[s] to return to the subject location." *Lugo*, 114 F.4th at 86 (internal citation omitted). This prong is "critical" to a court's Title III standing analysis. *Dominguez v. Banana Republic*, LLC, 613 F. Supp. 3d 759, 765 (S.D.N.Y. 2020), *aff'd sub nom. Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68 (2d Cir. 2022). The Plaintiff has not alleged that he has ever purchased from Budr Cannabis or that he lives in close proximity to a Budr Cannabis dispensary. He has not established that he intends to use the Website to select a product for subsequent purchase in-store or to order products for delivery. The Website is of no practical use without a customer's intention to visit the store to purchase and pick-up pre-selected items, or an intention—and ability—to order products for delivery. Tirella Decl. ¶ 14.

8

An ADA plaintiff must show that he or she intends to use information from an allegedly inaccessible website for purposes beyond just bringing a lawsuit. *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022). Accordingly, the central question for the Court is not whether a complaint "pleads the magic words that a plaintiff 'intends to return' to an establishment but instead whether an examination of all relevant facts establishes a real and immediate threat of future injury. *Calcano*, 36 F.4th at 75; *Goldberg v. Stein Saks, PLLC*, No. 1:23-CV-3089 (MKV), 2024 WL 816518, at *4 (S.D.N.Y. Feb. 26, 2024), *appeal dismissed*, No. 24-515, 2024 WL 4194016 (2d Cir. Aug. 7, 2024) (a plaintiff's "reliance on a mere profession of an intent to return to the Website is not enough to establish standing for prospective relief") (internal citation omitted). Conclusory allegations of an intent to return do not suffice. *Calcano*, 36 F.4th at 76. Therefore, the Plaintiff 's burden is to establish that he has a real and immediate intention to use the Website to purchase cannabis products from Budr Cannabis. *Lugo*, 114 F.4th at 86 (the party invoking federal jurisdiction has the burden of proving standing).

Especially on point is *Harty v. W. Point Realty, Inc.*, 28 F.4th 435 (2d Cir. 2022). The plaintiff in *Harty v. W. Point Realty* brought an ADA-website claim against West Point Realty Inc. alleging that the defendant's website for its Holiday Inn Express hotel was not ADA compliant and therefore infringed upon his right to travel free from discrimination. *Harty*, 28 F.th at 440. 443. The Second Circuit affirmed the lower court's dismissal of the case for lack of standing, stating: "Because Harty asserted no plans to visit West Point or the surrounding area, he cannot allege that his ability to travel was hampered by West Point Realty's website in a way that caused him concrete harm." *Id.* at 443. The Second Circuit further remarked that "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Id.* (internal citation omitted).

9

Similarly, in *Calcano v. Swarovski*, the Second Circuit consolidated ADA cases and held that the plaintiffs' "vague assertions" that they had visited the defendant businesses in the past did not make their claim of imminent future injury plausible. *Calcano*, 36 F.4th at 76. The Second Circuit cited to the fact that the plaintiffs failed to "provide any details about their past visits or the frequency of such visits" and one of the plaintiffs did not even allege where he lived, making an assessment of proximity to the defendant impossible. *Id.* at 77. Meanwhile, another of the plaintiffs asserted that he lived in the Bronx, which he described was "close to the Defendant's retail store" in Columbus Circle. *Id.* at 76. The Second Circuit responded to this assertion, stating: "depending on where [the plaintiff] lives in the Bronx, which the complaint does not say, that address could be up to an hour away" from the defendant's Columbus Circle store. *Id.* at 76.

The instant Plaintiff's copy-and-paste complaint, like the plaintiffs' complaints in *Harty* and *Calcano*, fails to allege that "based on the past frequency of plaintiff's visits and the proximity of defendant's services to plaintiff's home," he intends to purchase from Budr Cannabis. *Id.* at 73. First, the Plaintiff does not allege that he has ever visited the Defendant's dispensary, nor that he has ever purchased an item from it. Am. Compl. ¶¶ 1-96. Second, the Plaintiff does not allege where he lives—merely that he was "denied the full use and enjoyment of the facilities . . . on Defendant's Website in Bronx County." Am. Compl. ¶ 12. Because the Plaintiff fails to allege where he lives, like one of the plaintiffs in *Calcano*, an assessment of proximity to the Defendant's store is "impossible." *Calcano*, 36 F.4th at 77. Nor is it possible to determine, without Plaintiff's current address, whether he is in the delivery zone of a Budr dispensary. Tirella Decl. ¶ 13.

For the sake of argument, if the Plaintiff lives in Bronx County—which he does not allege—depending on where he lives, the Yonkers Budr Cannabis store could be approximately one-half hour away by car and over one hour away by public transit. Driving and Public Transit

Directions from 749 E 135th St #105, Bronx, NY 10454 to Budr Cannabis - Yonkers, 887 Yonkers Ave, Yonkers, NY 10704, GOOGLE MAPS https://www.google.com/maps (follow "Directions" hyperlink; then search starting point field for "749 E 135th St #105, Bronx, NY" and search destination field for "Budr Cannabis Yonkers").  Additionally, as Budr Cannabis Yonkers only delivers to two (2) out of at least twenty-five (25) Bronx County ZIP Codes, it is unlikely that Plaintiff would be within the delivery range.  Tirella ¶ 13.

Moreover, in Exhibit 1 to the Amended Complaint, a March 2024 medical report links the Plaintiff to 343 West 121st Street, Apt #3, New York, New York, 10027. Am. Compl. Ex. 1. Again, for the sake of argument, if the Plaintiff lives at this Manhattan address—which he does not allege—he fails to establish close proximity to a Budr Cannabis location.  343 West 121st Street is out of delivery range of a Budr Cannabis dispensary and is approximately one-half hour away by car and over one hour away by public transit from the closest store.  Tirella Decl. ¶ 13; Driving and Public Transit Directions from 343 W 121st St, New York, NY 10027 to Budr Cannabis - Yonkers, 887 Yonkers Ave, Yonkers, NY 10704, GOOGLE MAPS https://www.google.com/maps (follow "Directions" hyperlink; then search starting point field for "343 W 121st St, NY" and search destination field for "Budr Cannabis Yonkers").

Like another plaintiff in *Calcano*, these scenarios "hardly support[] an inference that [a plaintiff], who is blind, would 'immediately' make this [out-of]-borough trip just to purchase" cannabis.  *Calcano*, 36 F.4th at 76.

To the extent that the Plaintiff alleges he "intended to visit" the Budr Cannabis dispensary in Danbury, Connecticut, this allegation falls far short of what is required to prove intent to return. *Id.* at 73; Am. Compl. ¶ 27.  The Plaintiff does not allege: (i) that he has ever visited the Danbury

Budr Cannabis store; (ii) that he lives in close proximity to it; nor (iii) that he has a genuine, concrete intention to visit it. Am. Compl. ¶ 27.

Plaintiff's assertion that he "intended to visit the Defendant's Danbury location due to its proximity to Mohegan Sun" casino—establishments that are approximately 100 miles and a minimum one and one-half hour drive apart—is a prime example of the Plaintiff's "Mad-Libs-style" complaint, which "further confirms the implausibility of [his] claims of injury." *Id.* at 77; Driving Directions from Budr Cannabis - Danbury, 108 Federal Rd, Danbury, CT 06810 to Mohegan Sun – 1 Mohegan Sun Blvd, Uncasville, CT 06382, GOOGLE MAPS https://www.google.com/maps (follow "Directions" hyperlink; then search starting point field for "Danbury Budr Cannabis" and search destination field for "Mohegan Sun"). Importantly, the Budr Cannabis Danbury location is owned by separate entity who is not a defendant in this action. Even assuming the Plaintiff has adequately alleged injury under the ADA, the Defendant here cannot be liable for actions by another entity. *See*, *e.g.*, *Lugo*, 114 F.4th at 85 (standing requires a showing that a plaintiff's alleged injury is "fairly traceable to the defendant").

The dates the Plaintiff alleges he accessed the Website also evidence the implausibility of his claimed injury. Am. Compl. ¶¶ 31-33. He alleges to have accessed the Website on October 5 and October 6, 2024, just days before filing his initial complaint on October 9, 2024, and on February 15 and 17, 2025, days before filing this Amended Complaint on February 19, 2025. Am. Compl. ¶¶ 31-33. In *Fontanez v. Valley Lahvosh Baing Company, Inc.*, this Court considered similar "peculiar timing" when assessing a plaintiff's claims of injury. *Fontanez v. Valley Lahvosh Baing Co., Inc.*, No. 1:22-CV-5537 (MKV), 2023 WL 5390212, at *3 (S.D.N.Y. Aug. 22, 2023) (granting a motion to dismiss for lack of injury); *see also Toro v. Gen. Store*, LLC, No. 1:22-CV-

6130 (MKV), 2023 WL 4624690, at *3 (S.D.N.Y. July 19, 2023) (also considering a plaintiff's alleged dates of access when assessing plausibility of injury-in-fact).

The Court should not ignore "the broader context of Plaintiff['s] transparent cut-and-paste and fill-in-the-blank pleadings." *Calcano*, 36 F.4th at 78. The Plaintiff has failed to allege a true "intent to return" and therefore has failed to establish standing under Title III of the ADA. The case should be dismissed on that basis.

2.    The Court Lacks Subject-Matter Jurisdiction Because Plaintiff's Claims Are Moot.

The Plaintiff also lacks Article III standing because his claims are moot. The Website has been remediated in accordance with WCAG standards and will remain so. Tirella Decl. ¶¶ 17-19; Tindall Decl. ¶ 8.[4] Courts will dismiss a plaintiff's website ADA-accessibility complaint on mootness grounds when a defendant demonstrates that: "[1] there is no reasonable expectation that the alleged violation will recur and [2] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Tavarez v. Extract Labs, Inc.*, No. 21-CV-9916 (JPO), 2023 WL 2712537, at *3 (S.D.N.Y. Mar. 30, 2023) (dismissing an ADA case as moot because the website was made ADA-compliant); *Guglielmo v. Nebraska Furniture Mart, Inc.*, No. 19 CIV. 11197 (KPF), 2020 WL 7480619, at *6 (S.D.N.Y. Dec. 18, 2020) (same); *Diaz v. Kroger Co.*, No. 18 CIV. 7953 (KPF), 2019 WL 2357531, at *8 (S.D.N.Y. June 4, 2019) (same).

Courts in the Second Circuit have found that defendants have satisfied these two requirements by "submitting affidavits and other evidence demonstrating that the defendant has altered the website to bring it into full and permanent compliance and has no intention of regressing

---

[4] Courts may consider defendants' affidavits or declarations on a Motion to Dismiss explaining "how the defendant has taken measures to ensure that its website is in full compliance with the [WACG] best practices." *Tavarez v. Extract Labs, Inc.*, No. 21-CV-9916 (JPO), 2023 WL 2712537, at *2 (S.D.N.Y. Mar. 30, 2023).

back to inaccessibility." *Tavarez*, 2023 WL 2712537, at *3. For example, in *Diaz v. Kroger Co.*, the Court found that the defendant established that the subject website was remediated by asserting, *inter alia*, (i) the barriers to access, as alleged by the plaintiff, had been remediated; and (ii) it had "no intention of undoing those changes or regressing to non-compliance with the ADA." *Diaz*, 2019 WL 2357531, at *3.

The Defendant here has made the same showing. In October 2024, the Budr Cannabis Entities instructed the Website's designers, Rebellion Group, to ensure the Website was in compliance with the WCAG. Tirella Decl. ¶ 16. Rebellion Group conducted an audit of representative pages of the Website for any WCAG violations. Tinall Decl. ¶ 6. "Representative" pages are considered pages that use the same base template and components, and differ only in the specific written and visual content they contain. *Id.* Rebellion Group audited the representative pages with the intent that issues identified on those pages would be subject to remediation on corresponding "sister" pages. *Id.* Based on this audit, Rebellion Group recommended remediation for certain of the Website's pages. *Id.* ¶ 7. In November 2024, Rebellion Group began remediating these pages. *Id.* ¶ 8. On March 4, 2025, Rebellion Group confirmed that it completed this remediation to WCAG standards. *Id.* Rebellion Group manually performed quality assurance testing on the remediated pages, in addition to automated testing. *Id.* For the automated testing, Rebellion Group used PowerMapper, the same tool identified in Plaintiff's Amended Complaint, to re-test portions of the Website. *Id.* ¶ 9, Ex. A.

Additionally, a founder of Budr Cannabis, Carl Tirella, ran an accessibility report on www.budrcannabis.com/shop-yonkers which confirmed that the page, which includes the Website's online menu, is "accessible" and "compl[ies] with legislation." Tirella Decl. ¶ 18-19, Ex. A. Tirella declares that, like the defendant in *Diaz*, he has no intention of undoing the

remediations made by Rebellion Group and has no intention of regressing the Website into a non-accessible state.  Tirella Decl. ¶ 20.

###    C.    This Court Lacks Subject Matter Jurisdiction over Plaintiff's State and Local Law Claims, Which Are Also Insufficiently Pleaded.

This Court lacks subject matter jurisdiction over the Plaintiff's second, third, and fourth causes of action based on New York City and New York State law because a district court "cannot exercise supplemental jurisdiction unless there is first a proper basis for original jurisdiction." *See*, *e.g.*, *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017); *Williams v. Long Beach Mortg. Co.*, 709 F. App'x 92, 93 (2d Cir. 2018).  Therefore, when a district court dismisses an action's federal law claims for lack of subject-matter jurisdiction pursuant to F.R.C.P. 12(b)(1), the court is then "precluded from exercising supplemental jurisdiction over related state–law claims." *Cohen,* 873 F.3d at 399.  Because the Court lacks subject matter jurisdiction over Plaintiff's ADA claim for the reasons discussed above, the Court too lacks subject matter jurisdiction over Plaintiff's state and local law claims. *Id.*  In any event, each of the state and local law claims fails on their own steam.

First, the New York State Human Rights law ("NYSHRL") is "governed by the same legal standards as govern federal ADA claims." *See*, *e.g.*, *Payne v. Cornell Univ.*, No. 21-109-CV, 2022 WL 453441, at *2 (2d Cir. Feb. 15, 2022).  Therefore, to the extent a plaintiff brings a disability-discrimination state-law claim under NYSHRL, it "survives or fails on the same basis as his ADA claim." *Zuchegno v. FQSR, LLC*, 600 F. Supp. 3d 279, 286 (W.D.N.Y. 2022).  Accordingly, the Plaintiff's third cause of action alleging Defendant violated the NYSHRL should be dismissed for the same reasons as his ADA claim. *Id*

Second, Plaintiff purports to bring claims under both the NYSHRL and the New York State Civil Rights Law ("NYSCRL").  Am. Compl. ¶¶ 73-95 (Plaintiff's third and fourth causes of

action).  These are "not separate causes of action, as the New York State Civil Rights Law is the provision of the NYSHRL that provides for penalties."  *See*, *e.g.*, *Winegard v. Crain Commc'ns, Inc.*, No. 20-CV-01509 (AJN), 2021 WL 1198960, at *3 (S.D.N.Y. Mar. 30, 2021); *Batista v. PhotonLight.com, Inc.*, 84 Misc. 3d 1210(A), 219 N.Y.S.3d 869 (N.Y. Sup. Ct. 2024).

The New York State Human Rights Law is comprised of its substantive law, New York Executive Law §§ 292 *et seq.*, and the sections which provide penalties for violations thereof, New York Civil Rights Law §§ 40 *et seq.*  *Dominguez v. New York Equestrian Ctr., Ltd.*, No. 18-CV-9799 (AJN), 2020 WL 5796275, at *3 (S.D.N.Y. Sept. 28, 2020).  Therefore, Plaintiff's fourth cause of action pursuant to the NYSCRL should be dismissed for the same reasons as his NYSHRL cause of action.

Third, Plaintiff's second cause of action, alleging the Defendant violated the New York City Human Rights Law ("NYCHRL"), should be dismissed because the Plaintiff does not allege that he requested an accommodation from the Defendant.  *Sullivan v. BDG Media, Inc.*, 71 Misc. 3d 863, 871, 146 N.Y.S.3d 395, 402 (N.Y. Sup. Ct. 2021).  In *Sullivan v. BDG Media Inc.*, the Supreme Court in New York County, New York dismissed the plaintiff's NYCHRL claim because he did not "allege that he sought and was denied a . . . modification or accommodation" from the defendant.  *Id.* at 873.  Moreover, the plaintiff in *Sullivan* did not identify any respect in which the New York Supreme Court should have treated his NYCHRL claim differently from his NYSHRL claim.  *Id.* at n.8.  The same is true here.  The Plaintiff never asked for an accommodation from the Defendant, Tirella Decl. ¶ 15, and makes no allegation as to why his NYCHRL claim should be treated differently by the Court than his NYSHRL claim.  Am. Compl. ¶¶ 84-93.  Accordingly, even assuming that the Plaintiff suffered injury under the NYCHRL, his NYCHRL claim should be dismissed.

Not only is the Court "precluded from exercising supplemental jurisdiction over related state–law claims" where the federal law action is dismissed pursuant to F.R.C.P. 12(b)(1), *Cohen*, 873 F.3d at 399, each of Plaintiff's state and local law claims fail on their own.

### D.    Plaintiff's Declaratory Relief Claim Should be Dismissed as it is Duplicative of His ADA Claim.

Dismissal of a declaratory cause of action is proper where the declaratory action is redundant, meaning it seeks the same relief sought in the plaintiff's other causes of action. *See*, *e.g.*, *Chalas v. Pork King Good*, 673 F. Supp. 3d 339, 345 (S.D.N.Y. 2023) (dismissing a declaratory cause of action where it "merely reiterate[d] the same allegations as" the plaintiff's other counts); *Guerrero v. Ellusionist.com, Inc.*, No. 22-CV-2465 (ER), 2023 WL 3847402, at *4 (S.D.N.Y. June 6, 2023) (same).

The Plaintiff's declaratory action in the case at bar should be dismissed for that reason. His declaratory relief cause of action does not include allegations separate from those of his other four causes of action.  Am. Compl. ¶¶ 94-96.  Accordingly, Plaintiff's fifth cause of action for declaratory relief should also be dismissed. *Chalas*, 673 F. Supp. 3d at 345.

## IV.    <u>Conclusion</u>

The Plaintiff attempts to use his cut-and-paste complaint to beget monetary "damages" from the Defendant.  However, despite this Court having already allowed Plaintiff one opportunity to clean up his complaint, it still lacks information critical to establishing standing under Title III of the ADA.  Moreover, the Website has been remediated.  Accordingly, the Court lacks subject matter jurisdiction to hear this action, and it should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), thereby precluding the Court's supplemental jurisdiction over Plaintiff's state and local law claims as well.

THE DEFENDANT,
CAPRI HOLDINGS 2 LLC


By: */s/ Steven J. Stafstrom*
    Steven J. Stafstrom
    Pullman & Comley, LLC
    850 Main Street
    P.O. Box 7006
    Bridgeport, CT 06601-7006
    Telephone 203 330 2266
    *sstafstrom@pullcom.com*

## **CERTIFICATION**

I hereby certify that the total number of words in this brief, inclusive of headings and footnotes and exclusive of pages containing the caption, table of contents, the table of authorities, signature block, the certificate of service, and this certification is 5,619.

*/s/Steven J. Stafstrom*
Steven J. Stafstrom
*Attorney for Defendant*

## <u>CERTIFICATION</u>

I certify that a copy of the above was or will immediately be mailed or delivered electronically or non-electronically on March 5, 2025 to all counsel and self-represented parties of record and that written consent for electronic delivery was received from all counsel and all self-represented parties of record who were or will immediately be electronically served.


Joseph & Norinsberg, LLC
Jon L. Norinsberg, Esq.
Arjeta Albani, Esq.
110 East 59th Street
Suite 2300
New York, New York 10022
jon@norinsberglaw.com
arjeta@norinsberglaw.com



_/s/ Steven J. Stafstrom_
Steven J. Stafstrom, Esq.

20

ACTIVE/86135.1/ACARTER/20213867v1